# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5530 | **DATE** | 12/14/2004 |
| **CASE TITLE** | Robert Barnes, et al vs. Michael Duffy, et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment with respect to claims for common law fraud and conspiracy to defraud [R. 39-1]is denied, because a genuine issue of material fact exists regarding those claims. Duffy Defendants' motion for summary judgment under Count I [R. 41-1] is granted as to Count I, because there is no genuine dispute that ERISA does not entitle Plaintiff to the relief it seeks from the Duffy Defendants in Count I. Defendants' motion for summary judgment on arbitration defense [R. 37-1]is denied, because the CBA does not require Plaintiff to seek arbitration on this dispute prior to litigation.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | DEC 1 5 2004 | |
| ✓ | Docketing to mail notices. | | | date docketed | 64 |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| TH✓ | courtroom deputy's initials | 2004 DEC 14 PM 3: 55 | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT BARNES, as Trustee of the )
CHAUFFEURS, TEAMSTERS & )
HELPERS LOCAL UNION NO. 301 )
HEALTH & WELFARE FUND, )
                                )
            Plaintiff,          )
                                )       No. 02 C 5530
        v.                      )
                                )
MICHAEL DUFFY, JOHN JARLING,    )
PARTRICIA JARLING and DUFFY     )
TRUCKING, LLC,                  )
                                )
            Defendants.         )

**DOCKETED**

**DEC 1 5 2004**

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Robert Barnes ("Barnes") sued Defendants Michael Duffy, Duffy Trucking,

LLC (the "Duffy Defendants"), John Jarling, and Patricia Jarling (the "Jarling Defendants"),

alleging common law fraud and conspiracy to defraud, and seeking equitable relief pursuant to

29 U.S.C. § 1132(a)(3)(B)(ii). Plaintiff moves for summary judgment on each of its claims. The

Duffy Defendants move for summary judgment on the basis that: (1) Plaintiff cannot prove its

common law fraud and conspiracy to defraud claims; (2) the relief Plaintiff seeks from the Duffy

Defendants under 29 U.S.C. § 1132(a)(3)(B)(ii) is not permitted; and (3) the Collective

Bargaining Agreement ("CBA") bars Plaintiff's claims because it requires Plaintiff to arbitrate

this dispute prior to litigation. Finally, the Jarlings move for summary judgment on the basis

that: (1) Plaintiff cannot prove its fraud theories; and (2) the CBA bars Plaintiff's claims because

it requires Plaintiff to arbitrate this dispute prior to litigation. For the reasons set forth below,

the Court denies Plaintiff's motion, grants in part and denies in part the Duffy Defendants'

motion, and denies the Jarlings' motion.

# FACTUAL BACKGROUND

## I.      Parties

Barnes filed this case as Trustee of the Chauffeurs, Teamsters & Helpers Local Union No. 301 Health & Welfare Fund ("the Fund"). (R. 45-1, Defs.' Resp. to Pl.'s Stmt. of Facts ¶ 1.) The Fund is a self-funded employee welfare benefit fund within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* (*Id.*) The Fund's principal offices are located in Waukegan, Illinois. (*Id.* ¶ 11.)

Defendant Duffy Trucking, LLC is a trucking company located in McHenry, Illinois. (*Id.* at ¶ 2.) Defendant Michael Duffy is an officer, employee, and the sole owner of Duffy Trucking. (*Id.*) Defendant John Jarling is a truck driver who resides with his spouse, Defendant Patricia Jarling, in Capron, Illinois. (*Id.* ¶ 7.)

## II.      John Jarling's Employment

In 2000, John Jarling worked for Arrow Marine, which contributed to the Fund on Jarling's behalf. (R. 45-1, Defs.' Resp. to Pl.'s Stmt. of Facts ¶ 18.) Sometime in March of 2001, Jarling left Arrow Marine and leased a truck from a Peterbuilt dealer. (R. 36-1, Pl.'s Ex. 12, J. Jarling Dep. 32.) On March 18, 2001, Jarling signed an Independent Contractor Agreement for Owner/Operators (hereinafter referred to as the "Independent Contractor Agreement") with Duffy Trucking. (R. 48-1, Pl.'s Resp. to Defs.' Stmt. Of Facts ¶ 8.) This agreement allowed John Jarling to operate his leased truck under Duffy Trucking's authority and Illinois Commerce Commission numbers. (R. 45-1, Defs.' Resp. to Pl.'s Stmt. of Facts ¶ 23.)

Duffy Trucking entered into the Independent Contractor Agreement with Jarling intending that Jarling would make a run that Duffy Trucking was starting with another company, Pete Freightline. (R. 48-1, Pl.'s Resp. to Defs.' Stmt. Of Facts ¶ 11; R. 43-1, Defs.' App. C,

Duffy's Dep. 24-25.) This project ended up falling through, however, and Jarling never made any runs for Pete Freightline. (R. 48-1, Pl.'s Resp. to Defs.' Stmt. Of Facts ¶ 11.) Instead, Jarling made runs for Wispak Foods,[1] a company for which Jarling had hauled before signing the Independent Contractor Agreement with Duffy Trucking. (R. 43-1, Defs.' App. C, Duffy's Dep. 24-26; R. 45-1, Defs.' Resp. to Pl.'s Stmt. of Facts ¶ 25.) At the time Jarling signed on with Duffy Trucking, Wispak Foods was neither an existing Duffy account nor an account that Duffy booked for Jarling. (R. 43-1, Defs.' App. C, Duffy's Dep. 25-26; R. 45-1, Defs.' Resp. to Pl.'s Stmt. of Facts ¶ 25.) Defendants assert and Plaintiff disputes that Jarling made these runs for Wispak Foods under Duffy Trucking's authority. (R. 45-1, Defs.' Resp. to Pl.'s Stmt. of Facts ¶ 25; 48-1, Pl.'s Resp. to Defs.' Stmt. of Facts ¶¶ 13, 22.) Jarling continued to haul for Wispak Foods through September 15, 2001. (*Id.* ¶ 26.) Wispak paid Jarling directly, and Duffy Trucking took no commission for this work. (R. 48-1, Pl.'s Resp. to Defs.' Stmt. Of Facts ¶ 12.) The parties dispute whether Duffy Trucking could have, had it desired, taken commissions from Jarling for the work he performed for Wispak Foods. (*Id.* ¶¶ 16, 17.)

The parties also dispute whether Jarling worked exclusively for Wispak Foods between March and September 2001. Defendants contend that Duffy Trucking dispatched Jarling to move trailers for Duffy Trucking. (*Id.* ¶ 14.) Plaintiff disagrees and points to Duffy Trucking's weekly timesheets for that period, indicating that Jarling worked only for Wispak Foods. (R. 45-1, Defs.' Resp. to Pl.'s Stmt. of Facts ¶ 30.) Defendants state that the timesheets do not reflect this work because Duffy Trucking did not pay Jarling for moving its trailers. (R. 43-1, Defs.' App. C, Duffy's Dep. 62.)

---

[1] Defendants refer to this company as "Wispak Foods," and Plaintiff refers to it as "Empack Foods."

3

After Jarling ceased making runs for Wispak Foods, Duffy Trucking's weekly timesheets indicate that Jarling performed services exclusively for Lange Motor Express from October 22, 2001 to December 3, 2001. (R. 45-1, Defs.' Resp. to Pl.'s Stmt. of Facts ¶ 38.) Lange Motor Express paid Jarling directly, and Jarling did not pay any commission to Duffy Trucking. (*Id.* ¶ 39.)

Jarling made at least one run at Duffy Trucking's request in 2001. Duffy Trucking's timesheet for December 18, 2001 indicates Jarling earned a gross amount of $650.00 while working at the direction of Duffy Trucking. (*Id.* ¶ 40.) Duffy Trucking withheld $78.00 from Jarling's pay as commission for securing the work for Jarling. (*Id.*) An audit, performed by the Fund on April 4, 2002, found that in the year 2001, John Jarling worked for, or at the direction of, Duffy Trucking on only two days – December 18 and 22, 2001. (*Id.* ¶ 41.) John Jarling's 2001 Form 1099-MISC tax statement from Duffy Trucking reflects earnings of $650.00. (*Id.* ¶ 42.)

## III.  Duffy Trucking's Fund Contributions For John Jarling

Duffy Trucking first reported John Jarling to the Fund as an employee/broker[2] of Duffy Trucking on an Employer Monthly Reporting Form for the weeks ending March 24 and 31, 2001. (R. 45-1, Defs.' Resp. to Pl.'s Stmt. of Facts ¶ 46.) Michael Duffy reviewed the Employer Monthly Reporting Form and signed a certification attesting that those persons whose names appeared on the form were employees/brokers of Duffy Trucking. (*Id.* ¶ 47.) In addition to the above forms, Duffy Trucking sent the Fund Monthly Reporting Forms and certifications attesting that Jarling was its employee/broker every week of every month from April through December. (*Id.* ¶ 48.) Michael Duffy reviewed each Monthly Reporting Form for the months of

---

[2] In the trucking business the terms "broker" and "employee" refer to different legal relationships. (R. 48-1, Pl.'s Resp. to Defs.' Stmt. Of Facts ¶ 20.) The term "broker" is synonymous with "independent contractor." (*Id.* ¶ 21.)

4

March 2001 through November 2001 before signing the corresponding certification attesting to its truthfulness. (*Id.* ¶ 49.) Duffy Trucking submitted payments to the Fund for Jarling's work from April to December 2001. (*Id.* ¶¶ 50-56.) Duffy Trucking remitted payments to the Fund only after receiving the money for the payments from Jarling. (*Id.* ¶ 51.)

## IV.     The Collective Bargaining Agreements

From March 2001 through December 2001, two CBAs were in effect. The first CBA ("CBA Early 2001") was effective from May 1, 1995 through April 30, 2000. (R. 36-1, Pl.'s Ex. 4.) On July 7, 2000, the parties to CBA Early 2001 agreed to extend it through April 30, 2001 with few substantive changes. (R. 36-1, Pl.'s Ex. 3.) The second CBA ("CBA Late 2001") was effective from May 1, 2001 through April 30, 2004. (R. 36-1, Pl.'s Ex. 2.) Duffy Trucking was a signatory to both of these CBAs at all times relevant to this action. (R. 45-1, Defs.' Resp. to Pl.'s Stmt. of Facts ¶ 5.)

### A.     CBA Early 2001

Article 13 of CBA Early 2001 addresses the Health and Welfare Fund at issue in this case. Section 1(A) of Article 13 applies only to Local 301 and states "the Employer shall contribute and pay into [the Fund] the sum of One Hundred Fourteen Dollars ($114.00) per week for each regular employee covered by the CBA who performs any work in such week." (R. 36-1, Pl.'s Ex. 4 at 17.) Section 8 goes on to state that the CBA Early 2001 incorporates the Agreement and Declaration of Trust, which created the Fund, and that the Trust's provisions bind the parties. (*Id.* at 19.)

Article 17 addresses Owner/Drivers. It states that "Owner-Drivers operating their own vehicle are covered within the terms and conditions of the Agreement as to hours, wages, overtime, Health and Welfare and Pension and working conditions." (*Id.* at 24-25.) In contrast

to Owner/Drivers, CBA Early 2001 defines employees as the "bargaining unit covered by this Agreement which shall consist of pit, quarry, and material haulers." (*Id.* at 1.)

Article 15 of CBA Early 2001 outlines a grievance procedure that parties shall undertake when any differences arise as to the meaning and application of its provisions. (*Id.* at 21.) Section 1 provides detailed step-by-step instructions for the actions an employee or the Union should take to settle a grievance. (*Id.* at 21-24.) Section 2 of this article states that "with respect to the Health and Welfare or Pension provisions of this Agreement as determined by the Trustees of the Fund, the Union will not be required to go through the grievance procedure." (*Id.* at 24.)

### B. CBA Late 2001

CBA Late 2001 creates a different contribution structure for the Health and Welfare Fund. It states that:

> [t]he amount in accordance with Article 17.2(a) per employee per week shall be contributed for each employee, other than casual or emergency employees covered under [CBA Late 2001] for any week in which such employee performs any service for the Employer, even when such service is not performed under the terms of [CBA Late 2001].

(R. 36-1, Pl.'s Ex. 2 at 23, ¶ A.2(a).) It goes on to state that:

> [p]ayment shall be made on casual or emergency employees who are defined, for this purpose only, as employees who are not on a seniority list and such payment shall be made for the days actually worked at the rate of twenty percent (20%) of the weekly amount stated in Article 17.2(a) for each such day.

(*Id* at 23, ¶ A.2(b).) CBA Late 2001 also incorporates all Trust Agreements to the extent they are not inconsistent. (*Id.* ¶ 17.5.) It provides that the employer agrees that the Agreements and Declarations of Trust, which created the Fund, bind them. (*Id.* ¶ 17.6.)

Article 25 addresses Owner/Drivers. Unlike CBA Early 2001, CBA Late 2001 does not specifically state that provisions of the Agreement cover Owner/Drivers. It states that an:

Owner/Driver operating his/her own equipment or who is party to a good faith arm's length lease that makes Owner/Driver responsible for the equipment and where the Owner/Driver has the normal business risks associated with the ownership of such equipment shall not be considered an employee but an independent contractor-subcontractor under this Agreement.

(*Id.* ¶ 25.1.) Regarding the Fund, CBA Late 2001 provides "[e]mployers who subcontract to Owner/Drivers who elect to continue to stay in Teamsters Jointly-Trusted Benefit Funds shall follow their respective past practices with respect to the required contributions." (*Id.* ¶ 25.2.) CBA Late 2001 defines an "employee" as "the employee or employees in the classifications of work covered by this Agreement." (*Id.* ¶ 1.1)

CBA Late 2001 outlines a grievance procedure in Article 19, titled "Grievances And Arbitration." (*Id.* 29.) It defines a grievance as "any dispute over the meaning, interpretation, application or violation of this Agreement brought by an employee or the Union." (*Id.* ¶ 19.1.) If the parties cannot resolve their dispute through this procedure, "the grievance may be submitted . . . to an Arbitrator jointly selected by the Employer and the Union." (*Id.* ¶ 19.10.) CBA Late 2001 also addresses disagreements over eligibility for benefits. It states "[w]ith respect to benefits, any disagreement as to eligibility . . . shall be determined by the Trustees of the Fund concerned. The Fund shall, in all respects, be administered in accordance with the Trust Agreement." (*Id.* ¶ 17.3(b).)

## V.    The Fund's Payments To The Jarlings

Between March 2001 and December 2001, the Jarlings submitted medical claims to the Fund. (R. 45-1, Def.'s Resp. Pl.'s Stmt. Facts ¶ 59.) Based on Duffy Trucking's contributions to the Fund on behalf of John Jarling, the Fund paid the Jarling's medical claims. *Id.* After February 16, 2001, the Fund paid $126,468.31 in benefits on behalf of John Jarling and his

dependents. *Id.* After auditing Duffy Trucking in April, 2002, Plaintiff terminated John

Jarling's health and welfare benefits under the Fund. (*Id.* ¶ 64.)

## LEGAL STANDARDS

Summary judgment is proper when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." FED. R. CIV. P. 56(c). A genuine issue of triable fact exists only if "the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of

Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). The party seeking summary judgment has

the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A party will

successfully oppose summary judgment only if it presents "definite, competent evidence to rebut

the motion." *Equal Employment Opportunity Comm'n v. Sears, Roebuck & Co.*, 233 F.3d 432,

437 (7th Cir. 2000) (quotations and citation omitted). The Court considers the evidentiary record

in the light most favorable to the nonmoving party, and draws all reasonable inferences in his

favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

## ANALYSIS

Plaintiff moved for summary judgment on its fraudulent misrepresentation theory against

the Duffy Defendants. The Duffy Defendants oppose this motion arguing that Plaintiff has

failed to prove that either Duffy Defendant intentionally made a false statement of material fact

and moved for summary judgment of no liability on Plaintiff's fraud theories.

Against the Jarling Defendants, Plaintiff moved for summary judgment on its fraudulent concealment theory. The Jarling Defendants oppose this motion on the basis that Plaintiff has failed to prove that the Jarlings both concealed a material fact and did so intentionally. The Jarling Defendants also moved for summary judgment of no liability on Plaintiff's fraud theories.

Plaintiff also moved for summary judgment for equitable relief under ERISA, 28 U.S.C. § 1132(a)(3)(B)(ii), against both the Duffy Defendants and Jarling Defendants. The Duffy Defendants oppose this motion arguing they received no benefits from Plaintiff or the Jarlings and therefore any payment of monetary damages from the Duffy Defendants to Plaintiff would not constitute "equitable" relief, as required by ERISA. The Jarling Defendants oppose Plaintiff's motion regarding equitable relief because John Jarling's work status as an independent contractor entitled the Jarlings to all benefits received. The Duffy Defendants moved for summary judgment, arguing that ERISA does not entitle Plaintiff to its requested relief from the Duffy Defendants.

All Defendants moved for summary judgment that the CBA Late 2001 bars Plaintiff's suit because Plaintiff did not follow the CBA's grievance procedures before filing this lawsuit. Plaintiff opposes this motion arguing that the Fund is not a party to the CBA Late 2001 and, therefore, the CBA does not require Plaintiff to file a grievance before bringing suit.

## I. Plaintiff's Common Law Fraud Theories

### A. Genuine Issues Of Material Fact Exist Regarding Plaintiff's Fraudulent Misrepresentation Claim Against The Duffy Defendants

To establish fraudulent misrepresentation under Illinois law, a plaintiff must prove:

(1) the defendant intentionally made a false statement of a material fact; (2) the plaintiff had a right to rely on that false statement; (3) the statement was made for

the purpose of inducing a reliance thereon; (4) the plaintiff in fact relied on the
statement; and (5) the plaintiff suffered injury as a direct result.

*Trustees of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 776-77, n.10 (7th Cir. 2002)

(quoting *Rolando v. Pence*, 769 N.E.2d 1108, 1112-13 (Ill. App. Ct. 2002)). Under Illinois law,

a party must prove fraud by clear and convincing evidence. *Bixby's Food Sys., Inc. v. McKay*,

193 F.Supp.2d 1053 (N.D. Ill. 2002). Plaintiff and the Duffy Defendants dispute whether the

Duffy Defendants intentionally made a false statement of material fact. It is difficult for

plaintiffs to prevail on the element of intent at the summary judgment stage. *Federal Deposit

Ins. Corp. v. Lauterbach*, 626 F.2d 1327, 1335, n.12 (7th Cir. 1980) ("In a case in which the party

moving for summary judgment urges that fraud be found, summary judgment will often be

inappropriate because the district court would be required to resolve the subjective issue of

fraudulent intent.")

Plaintiff has failed to show that there is no genuine dispute that it has clearly and

convincingly proven that the Duffy Defendants acted intentionally. Plaintiff merely offers

conclusory statements that because the Duffy Defendants certified various statements that were

allegedly false, the Duffy Defendants must have intentionally made those false statements.

While the Court recognizes that parties often prove fraudulent intent through circumstantial

evidence, *U.S. v. Britton*, 289 F.3d 976, 981 (7th Cir. 2002), at this stage, a genuine dispute exists

as to whether Plaintiff has clearly and convincingly proved that the Duffy Defendants acted

intentionally.[3] The Court therefore denies Plaintiff's motion for summary judgment on its

fraudulent misrepresentation against the Duffy Defendants.

---

[3]As discussed in Section I.B.2. of this Analysis, genuine issues of fact also exist regarding John
Jarling's eligibility to participate in the Fund.

**B.     Genuine Issues Of Material Fact Exist Regarding Plaintiff's Fraudulent Misrepresentation Claim Against The Duffy Defendants**

The Duffy Defendants moved for summary judgment on Plaintiff's common law fraud claims, arguing that Plaintiff has offered no evidence that Defendants made any knowingly false statements. Plaintiff counters that the Duffy Defendants knowingly made false statements when they sent monthly certifications to the Fund stating that Jarling was covered by the CBA.[4] Specifically, Plaintiff argues that the statements were false because the language in Defendants' Independent Contractor Agreement excludes Jarling from participating in the Fund and because Jarling's employment status made him ineligible to participate in the Fund as an Owner/Driver.

**1.     Questions Of Fact Exist Whether The Independent Contractor Agreement Precludes Jarling From Participating in the Fund**

Plaintiff argues the signed Independent Contractor Agreement precludes Jarling from participating in the Fund because the Agreement mandates that an Independent Contractor is not eligible to participate in plans or other Company benefits. Plaintiff first points to the following language in the Independent Contractor Agreement for Owner/Operators:

> XII. No Benefits
>      Consistent with independent contractor status, Contractor (and its employees) shall receive no vacation or holiday pay from Company, and shall not participate in plans or other Company benefits enjoyed by Company's own employees.

(R. 36-1, Pl.'s Ex. 9 at 7.) The Duffy Defendants contend this language only applies to benefits offered by Duffy Trucking and, therefore, Jarling is eligible for any Union benefits.

The Court agrees with the Duffy Defendant's interpretation. The Independent Contractor Agreement prohibits participation in "plans or other Company benefits." *Id*. This language

---

[4] The relevant language of the certification states "[t]his employer . . . hereby certifies to the Trustees of [the Fund], that each and every person whose name is set forth on the monthly report for whom contributions are being made is an employee/broker of the Employer and covered by a written [CBA] between the Employers and Teamsters Local No. 301, for the period of time for which the contributions are being made." (R. 43-1, Defs.' App. 2-9.)

11

limits to "Company benefits" the types of benefits in which the CBA prohibits an Independent Contractor from participating. The use of the words "or other" after "plans" indicates the parties intended to similarly limit the plans in which the CBA prohibited an Independent Contractor from participating. Because the Fund is a Union plan and not a Duffy Trucking plan, this section does not unambiguously preclude Jarling, as an Independent Contractor, from participating in the Fund.

Plaintiffs also point to other language in the Independent Contractor Agreement:[5]

XXIV. Responsibilities of Parties
Contractor further understands and agrees that Contractor is not entitled to any employee benefits normally granted to Company's employees, and Contractor shall indemnify, defend and hold Company forever harmless from any and all liabilities (including expense and attorney's fees) and all costs, loss, expenses or damages arising from employee compensation or benefits, unemployment, social security or any other tax deduction or any employee benefits including, but not limited to, group accident and health insurance or any worker's compensation claims, injuries to or omissions of Contractor or for failure to comply with the terms and obligations of this Agreement.

(R. 36-1, Pl.'s Ex. 9 at 7.) Although this language appears to be broader than the "No Benefits" provision in Section XII, it does not unambiguously provide that Jarling may not participate in the Fund. First, it is not clear, and Plaintiff does not address the issue, whether the Fund benefits received by Jarling constitute "employee benefits normally granted to Company's employees" as required by this section of the CBA. Second, this provision requires Jarling to indemnify Duffy Trucking for liabilities relating to "employee compensation or benefits [] including, but not limited to, group accident and health insurance." If this provision contemplates disputes regarding Jarling's participation in group accident and health insurance, it is questionable that

---

[5] Plaintiff does not set forth this argument in its motion for summary judgment on its fraud theories, but instead, only in opposition to the Duffy Defendants motion on that issue. The Court, therefore, only considers this argument in the context of Plaintiff's opposition to the Duffy Defendants' motion, and not in the context of Plaintiff's affirmative motion for summary judgment. Plaintiff waived this argument in support of its motion. *Smith v. Northeastern Illinois Univ.*, 388 F.3d 559, 569 (7th Cir. 2004) ("undeveloped argument constitutes waiver").

this provision could be simultaneously precluding Jarling from participating in such plans.

Because the Independent Contractor Agreement is ambiguous, questions of fact exist that render

summary judgment improper on whether this Agreement precludes Jarling from participating in

the Fund. *See Thomas v. Pearle Vision, Inc.*, 251 F.3d 1132, 1140 (7th Cir. 2001) ("[B]ecause

the contract is ambiguous, its interpretation is a question for the tier of fact and summary

judgment [is] improper").

### 2. There Is A Genuine Issue Of Material Fact As To Whether Jarling Worked For Duffy Trucking

Plaintiff also argues that the Duffy Defendants misrepresented Jarling's status as an

independent contractor. Plaintiff contends that Jarling was not eligible for the Fund as an

independent contractor because the Independent Contractor Agreement entered into by

Defendants was a sham and because Jarling did not work for or at the direction of Duffy

Trucking. Defendants rely on the Independent Contractor Agreement in support of their position

that they did not make any false statements to the Fund. They reason that even though Jarling

was not performing any hauling services for Duffy Trucking, Jarling was an independent

contractor pursuant to the Independent Contractor Agreement and was, therefore, eligible to

participate in the Fund. (R. 48-1, Pl.'s Resp. to Defs.' Stmt. of Facts ¶ 22.)

Owner/Drivers are eligible to participate in the Fund under both CBAs. CBA Early 2001

specifically states that the fund covers Owner/Drivers, and CBA Late 2001 states that

Owner/Drivers are eligible for the Fund if the employers who subcontract to them elect to

continue to stay in the Teamsters Jointly-Trusted Benefit Funds. (R. 36-1, Pl.'s Ex. 4, at 24-25;

R. 36-1, Pl.'s Ex. 2, at ¶ 25.2.) Both CBA's limit the circumstances under which the respective

CBA requires an employer to contribute to the Fund for eligible workers. Both CBA's state that

an employer must contribute to the Fund weekly for employees who perform any work in that

13

week. (R. 36-1, Pl.'s Ex. 2, at 23, ¶ A.2(a); R. 36-1, Pl.'s Ex. 4 at 17.) CBA Late 2001 further

specifies that the employer must contribute to the Fund for employees, other than casual or

emergency employees, for any week in which the employee performed a service for the

employer, even when the employee does not perform the service under the terms of CBA Late

2001. (R. 36-1, Pl.'s Ex. 2, at 23, ¶ A.2(a).) Therefore, both relevant CBA's contemplate

covering persons with a working status other than that of a full-time employee.[6]

The Independent Contractor Agreement, by itself, does not establish that John Jarling

was eligible to participate in the Fund. *See Earley v. Indus. Comm'n*, 197 Ill. App. 3d 309, 317-

18, 553 N.E.2d 1112, 1118, 143 Ill. Dec. 126, 132 (Ill. App. Ct. 1990) ("although a contractual

agreement is a factor to consider, it does not, as a matter of law, determine an individual's

employment status"). Therefore, whether or not John Jarling was an independent contractor for

Duffy Trucking, such that he was eligible to participate in the fund depends upon the particular

circumstances of his working relationship with Duffy Trucking.

The Duffy Defendants argue that Jarling worked for Duffy Trucking on a weekly basis

by running jobs for Wispak Foods and Lange Motor Express under Duffy Trucking's authority.

(R. 45-1, Defs.' Resp. To Pl.'s Stmt. Of Facts ¶ 25.) Plaintiff notes, however, that while hauling

for Wispak Foods, Jarling's truck did not reflect that Jarling or Duffy Trucking was operating it.

(R. 53-1, Pl.'s Resp. 9.) Further, Wispak Foods and Lange Motor Express paid Jarling directly,

never forwarding any money to Duffy Trucking for Jarling's work. (R. 45-1, Defs.' Resp. to

Pl.'s Stmt. of Facts ¶¶ 33, 34, 39.) Jarling did not pay a commission to the Duffy Defendants for

the work he performed for either Wispak Foods or Lange Motor Express. (*Id.* ¶¶ 35, 39.)

---

[6]The Court notes that Plaintiff never offers any legal support for a standard by which the Court
should analyze John Jarling's work status. Without establishing the boundaries of the CBA's
coverage, Plaintiff, for that reason alone, fails to show the absence of genuine issues of material
fact regarding whether John Jarling is covered by the CBA's.

Plaintiff argues that these facts indicate that Jarling was working for Wispak Foods and Lange Motor Express but not for Duffy Trucking. The Duffy Defendants respond by arguing that John Jarling worked for Wispak under Duffy Trucking's authority. (R. 47-1, Duffy's Stmt. Add'l Facts ¶ 6.) The Duffy Defendants also assert that John Jarling was under a lease to Duffy Trucking from March 2001 to September 2001, during which Duffy Trucking had Jarling move trailers. (*Id.* ¶ 8.) The Duffy Defendants further contend that John Jarling's lease agreement with Duffy Trucking, entitled Duffy Trucking to commissions for Jarling's work for Wispack, whether or not Duffy Trucking actually took those commissions. (*Id.* ¶ 10.)

These facts, demonstrate a genuine issue of material fact as to whether Jarling worked as an independent contractor for Duffy Trucking in 2001.[7] Accordingly, the Court denies Defendants' motion for summary judgment.

### C. Genuine Issues Of Fact Exist Regarding Plaintiff's Fraudulent Concealment Claim Against the Jarling Defendants

To establish fraudulent concealment, a party must prove:

(1) the concealment of a material fact; (2) that the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) that the innocent party could not have discovered the truth through a reasonable inquiry or inspection [] and relied upon the silence as a representation that the fact did not exist; (4) that the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the defendant concealed the fact led to his injury.

---

[7]The Duffy Defendants also contend there is no genuine issue of fact that Plaintiff has failed to prove that the Duffy Defendants acted with fraudulent intent. While Plaintiff relies solely on circumstantial evidence to demonstrate fraudulent intent, this is not uncommon because direct evidence of intent is rare. *Britton,* 289 F.3d at 981 ("As direct evidence of a defendant's fraudulent intent is typically unavailable, 'specific intent to defraud may be established by circumstantial evidence and by inferences drawn from examining the scheme itself that demonstrate that the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension.'") (quoting *United States v. Paneras,* 222 F.3d 406, 410 (7th Cir. 2000). There is enough evidence that a reasonable jury could find the Duffy Defendants acted with fraudulent intent.

*Biondi*, 303 F.3d at 777. As with its fraudulent misrepresentation claim Plaintiff must prove fraudulent concealment by clear and convincing evidence. *Bixby's Food Sys.*, 193 F.Supp.2d at 1065.

Plaintiff argues that the Jarlings concealed the material fact that John Jarling no longer worked in covered employment with the intent to induce the Fund's false belief that he worked for a covered employer, Duffy Trucking. The Jarling Defendants argue that they did not conceal any material fact because the CBA's covered John Jarling as an independent contractor. They also contend that even if the CBA's covered John Jarling, the Jarlings did not intend to deceive the fund.

As discussed in section I.A of this Analysis, it is difficult for a plaintiff to prevail on the intent element of fraud at the summary judgment stage. *Lauterbach*, 626 F.2d at 1335, n.12. As with its fraudulent misrepresentation theory, Plaintiff offers mere conclusory allegations of intent. At this stage, a genuine dispute exists regarding whether the Jarling Defendants acted with intent in concealing any misstatement.[8] The Court therefore denies Plaintiff's motion for summary judgment on its fraudulent concealment claim against the Jarling Defendants.

### D. Genuine Issues of Material Fact Exist Regarding Plaintiff's Fraudulent Concealment Claim Against The Jarlings

As discussed in Section I.B.2. of this Analysis, genuine issues of fact exist regarding whether the CBA's covered John Jarling. Further, genuine issues of fact exist regarding whether the Jarling Defendants intentionally concealed from the Fund John Jarling's actual employment status. The Court therefore denies the Jarling Defendants' motion for summary judgment for no liability on Plaintiff's fraud theories.

---

[8]As discussed in Section I.B.2. of this Analysis, genuine issues of fact also exist regarding John Jarling's work status with Duffy Trucking, LLC.

## II.    Plaintiff's Claims For Equitable Relief Under ERISA

### A.    ERISA, 29 U.S.C. § 1132(a)(3)(B)(ii), As A Matter Of Law, Does Not Entitle Plaintiff To The Relief It Seeks From The Duffy Defendants

The Duffy Defendants argue that Plaintiff has failed to develop any facts that support its claim in Count I for equitable relief pursuant to the terms of the Plan and 29 U.S.C. §1132(a)(3)(B)(ii) against them.[9] Plaintiff relies on two cases to support equitable relief against the Duffy Defendants – *Chicago Dist. Council of Carpenters Welfare Fund v. Angulo*, 169 F.Supp.2d 880 (N.D. Ill. 2001); and *Chicago Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, No. 94-C-2296, 1996 WL 99710 (N.D. Ill. March 4, 1996). Each of these cases, however, precedes the Supreme Court's decision in *Great-West Life & Annuity Ins. Co. v. Knudson*, making clear that "not all relief falling under the rubric of restitution is available in equity." 534 U.S. 204, 212, 122 S. Ct. 708, 714, 151 L.Ed.2d 635 (2002). The fund in *Great-West* made payments to a beneficiary injured in a car accident. The beneficiary won a tort settlement where the settling tortfeasor directly paid the beneficiary's attorney who then paid various creditors and a trust. The fund sued to enforce a reimbursement provision in the ERISA plan. The beneficiary moved for summary judgment on the basis that plaintiff was seeking a legal remedy not permitted under ERISA, 29 U.S.C. § 1132(a)(3). The Supreme Court affirmed the district court's grant of summary judgement because the beneficiary did not have possession of the property sought to be recovered, the settlement payment. 534 U.S. at 214, 122 S. Ct. at 715. As the Supreme Court explained, whether particular relief is "legal or equitable depends on the basis for plaintiff's claim and the nature of the underlying remedies sought." *Id.* (citing

---

[9]In the introductory paragraph to Count I in the Second Amended Complaint, Plaintiff indicates it only brings that claim against Defendants John and Patricia Jarling. (R. 14-1; Pl.'s Sec. Am. Compl. at p. 7.) Nonetheless, paragraph 25, which is part of Count I, charges that "Michael Duffy and Duffy Trucking actively participated in deceiving the Welfare Fund. (*Id.* ¶ 25.) Because Plaintiff opposes this portion of the Duffy Defendants' Motion (and actually seeks summary judgment on this issue in its own motion), the Court addresses this issue.

*Reich v. Continental Casualty Co.*, 33 F.3d 754, 756 (7th Cir. 1994).) *Great West*, therefore, makes clear that merely because a plaintiff refers to relief as "restitution" does not mean that it is recoverable under §1132(a) of ERISA. Instead, the action must "generally seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Great-West*, 534 U.S. at 214, 122 S. Ct. at 715.

The Seventh Circuit has recognized that "*Great-West* holds that, as a rule, a plan's demand to be reimbursed for benefits wrongly paid out is not [an equitable] claim; it is instead a quest for money damages and thus is legal rather than equitable." *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 410 (7th Cir. 2004) (Easterbrook) (affirming dismissal of AIG's claim under §502(a) (28 U.S.C. § 1132(a)) of ERISA seeking recoupment of disability benefits paid to beneficiary under a reservation of the right to recoup if, as was the case, a plan did not entitle the beneficiary to the money). The Seventh Circuit in *Leipzig* reasoned that AIG was seeking money and not the contents of a segregated fund. *Id.*

*Great-West* and *Leipzig* make clear that merely proving that a defendant "actively participated" in the fraud does not alone entitle plaintiff to equitable restitution.[10] Rather, a party seeking equitable relief under §1132(a) of ERISA must at least point to particular funds in the possession of the party who would be unjustly enriched absent equitable restitution. *Great-West*, 534 U.S. at 214, 122 S. Ct. at 715 (a prerequisite for equitable restitution is "particular funds or

---

[10]The Court notes that at least one case from this district has recognized that *Great-West* was based on a contractual provision to reimburse rather than a mistaken payment and should be limited to its facts. *See Iron Workers Tri-state Welfare Plan v. Jaraczewski*, No. 02-C-2596, 2002 WL 31854972 (N.D. Ill. Dec. 19, 2002). The facts of *Iron Workers* are different from the case at hand because there the defendant was in possession of the excess funds and have been unjustly enriched absent equitable restitution. 2002 WL 31854972, *3. Such is not the case here, where the Duffy Defendants never received benefits from the Fund. The Court follows *Great-West* (as recently interpreted by the Seventh Circuit in *Leipzig*) to the extent it makes clear that there is a difference between legal restitution and equitable restitution and the latter seeks the return of particular funds in the possession of a party that would be unjustly enriched absent the equitable restitution. *Great-West*, 534 U.S. at 214, 122 S. Ct. at 715.

property in the defendant's possession"); *IUI Severance Pay Trust Fund v. Local Union No. 18-U, United Steel Workers of Am.*, 998 F.2d 509, 513 (7ᵗʰ Cir. 1993) (a factor in determining whether equitable restitution is warranted is that the party from whom payment is sought would be unjustly enriched absent recovery).[11]  Here, Plaintiff merely argues that the Duffy Defendants "actively participated in deceiving the Welfare Fund." (R. 14-1; Pl.'s Sec. Am. Compl. at ¶ 25; R. 53-1; Pl.'s Resp. Def.'s Mot. Summ. J. at 12-13.)  Plaintiff does not set forth facts that could prove that the Fund paid any benefits to, or that benefits are in the possession of, the Duffy Defendants. Even Plaintiff's Second Amended Complaint alleges the Fund paid benefits to the Jarlings – not to the Duffy Defendants. (R. 14-1; Pl.'s Sec. Am. Compl. at ¶ 19.)  Plaintiffs, therefore, are not seeking the recovery of any particular funds.  Instead, Plaintiffs do not care which money they recover, so long as they get the money they allegedly improperly paid. *Primax Recoveries Inc. v. Goss.*, 240 F.Supp.2d 800, 803 (N.D. Ill. 2002) (holding that relief sought was legal in nature and not permitted under ERISA).  ERISA, 29 U.S.C. § 1132(a)(3), does not provide for relief of this nature because it is not equitable.  There is no genuine dispute that ERISA does not entitle Plaintiff to the relief it seeks from the Duffy Defendants and the Court grants summary judgement for the Duffy Defendants under Count I.

### B.  Genuine Issues Of Material Fact Exist Regarding Plaintiff's Claim For Equitable Relief Under 29 U.S.C. § 1132(a)(3) Against the Jarlings

Plaintiff argues that absent repayment of benefits from the Jarling Defendants, the Jarlings will be unjustly enriched.  The benefits only unjustly enrich the Jarlings, however, if John Jarling's work status did not entitle them to those benefits.  Whether or not the CBA's

---

[11]Also, the Second Circuit has held that there is no remedy available under ERISA for a plaintiff seeking to recover money from a defendant that has not unjustly received from the plaintiff a benefit or does not hold funds that in good conscience belong to the plaintiff. *See Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317 (2d Cir. 2003); *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18 (2d Cir. 1996) (affirming district court's dismissal of defendant employer from ERISA claim because only the employee beneficiary had received the benefits and payments).

entitled the Jarlings to those benefits depends on whether the CBA's covered John Jarling as an employee, which is a genuinely disputed fact as set forth in Section I.B.2. to this Analysis. The Court, therefore, denies Plaintiff's motion for summary judgment on its equitable relief claim against the Jarling Defendants.

## III. CBA Late 2001 Does Not Require Plaintiff To Follow The CBA Grievance Procedures Before Initiating Legal Proceedings

All Defendants assert that CBA Late 2001 required Plaintiff to follow the established grievance procedure instead of filing this lawsuit. Plaintiff disagrees, arguing that the grievance procedure applies only to the Union or affected employees, and does not authorize the Fund to file grievances or demand arbitration under the terms of the CBA. In support of his argument, Plaintiff cites the United States Supreme Court case *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 104 S. Ct. 1844, 80 L. Ed. 2d 366 (1984). *Schneider* stands for the proposition that "courts must carefully examine the pertinent trust and collective bargaining agreements to determine whether parties intended to arbitrate disputes between trust funds and employers." *Pipe Fitters' Welfare Fund, Local Union 597 v. Mosbeck Indus. Equip., Inc.*, 856 F.2d 837, 840 (7th Cir. 1988).[12]

In *Schneider*, the trust agreements that governed the trust funds gave the trustees broad authority to initiate "any legal proceedings [that they] in their discretion deem in the best interest of the Fund to effectuate the collection or preservation of contributions." *Schneider*, 466 U.S. at 373, 104 S. Ct. at 1849. Further, the trust agreements did not expressly condition this authority

[12] The Supreme Court in *Schneider* turned to the CBA and the trust agreements to discern the parties' intent after making two conclusions. The Court first stated that the third-party beneficiary rule is merely a rule of construction useful in determining intent that courts should not apply so rigidly that it would defeat the intentions of the parties. *Schneider*, 466 U.S. at 370-71, 104 S. Ct. at 1848. The court then found that the presumption in favor of arbitration in disputes between Unions and employers was inapplicable because trust funds do not have the recourse that Unions do to the economic weapons of strikes and lockouts. *Id.* at 371-72, 104 S. Ct. at 1849.

on the exhaustion of any remedies in the CBAs. *Id.* at 373, 104 S. Ct. at 1849-50. The Court also found that neither the employers nor the Union intended to require the arbitration of disputes between the trustees and the employers. *Id.* at 374, 104 S. Ct. at 1850. The CBA's in *Schneider* only required arbitration for "differences that arise between the Company and the Union or any employee of the Company as to the meaning or application of the provisions of this agreement." *Id.* The Court noted that only the Union or the employer could invoke the arbitration process and found it unreasonable to infer that the parties to the various agreements intended the trustees to rely on the Union to arbitrate their disputes. *Id.* at 375, 104 S. Ct. at 1850. For the above reasons, the Court held that neither the trust agreements nor the CBAs evidenced any intent to require the trustees to arbitrate the trust provisions. *Id.* at 376, 104 S. Ct. at 1851.

Defendants assert that *Schneider* is factually distinguishable from the instant case. They argue that the grievance clause of CBA Late 2001 is broader than the language in *Schneider* and rely on *Jaffee v. Shanin Co.*, 763 F. Supp. 286 (N.D. Ill. 1991), for their assertion that where an arbitration clause is written broadly, the grievance procedure established in the CBA binds the fund. The CBA at issue in *Jaffe* stated "[i]n the event of *any* disagreement or dispute in *any* Company, arising out of the application or interpretation of this contract, the following steps shall be followed." *Jaffe*, 763 F. Supp. at 290 (emphasis added by Court in *Jaffe*). The Court stated that nothing about this language suggested that the Fund, as a party to the agreement, would not have recourse to the arbitration process. *Id.* The Court also examined the relevant portions of the CBA that established the rights, duties, and obligations of all parties involved with the trust fund.[13] *Id.* at 290-91.) It determined that the CBA gave broad power to the

---

[13] There was only one document to interpret because there was no separate trust agreement. *Id.* at 290.

trustees only in enforcing the collection of delinquent contributions, not in settling the issue before the Court. *Id.* at 291.

While Defendants are correct that the arbitration clause before the Court in the instant case is not as narrow as the clause in *Schneider*, the clause is also not as broad as the clause in *Jaffe*.[14] The Court in *Jaffe* emphasized that the clause applied to any disagreement in any Company. *Id.* at 290. In comparison, CBA Late 2001 defines a grievance as "*any* dispute over the meaning, interpretation, application or violation of this Agreement brought by *an employee* or *the Union.*" (R. 36-1, Pl.'s Ex. 2, CBA Late 2001 ¶ 19.1 (emphasis added).) The plain language of the grievance provision of CBA Late 2001 limits the grievance process to employers and the Union, and thus prevents the Fund trustees from having recourse to the grievance and arbitration process.

Additionally, the *Jaffe* Court stated that the arbitration language, which included specific references to only the Union, employers, and employees, was not conclusive evidence as to whether or not the CBA's required the Fund to arbitrate its claim. *Id.* at 291. It stated only that the arbitration language did not "foreclose application to the Fund." *Id.* The Court then turns to other relevant provisions of the agreement for further evidence of intent. *Id.* Accordingly, CBA Late 2001 states that any disagreement as to eligibility for Fund benefits "shall be determined by the Trustees of the Fund concerned." (R. 36-1, Pl.'s Ex. 2, CBA Late 2001 ¶ 17.3(b).) CBA Late 2001 further mandates that "[t]he Fund shall, in all respects, be administered in accordance with the Trust Agreement." (*Id.*) Neither party has introduced the Trust Agreement into the record[15], so the Court cannot examine it to discern the parties' intentions. Without the Trust

---

[14] Even if the facts in *Jaffe* were on par with the facts here, *Jaffe* is a district court case and is not binding on the Court.

[15] The Defendant bears the burden of demonstrating that an agreement requires arbitration. *Chicago Dist. Council of Carpenters Pension Fund v. K & I Const., Inc.,* 270 F. 3d 1060, 1066

22

Agreement, the only evidence of the parties' intent is the language that limits the grievance process to the employer and the Union. After reviewing CBA Late 2001, the Court finds no evidence of any intention by the parties to require the Fund trustees to resolve questions of eligibility by arbitration before resorting to litigation. *See also Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 609 (7th Cir. 2002) (refusing to require trustee to submit to arbitration where the governing contract provided for the resolution of disputes between only the employer and the Union).

(7th Cir. 2001); *Central States, Southeast & Southwest Areas Pension Fund v. Blue Ridge Trucking Co.*, No. 91 C 824, 1992 WL 159477, at *3 (N.D. Ill. June 26, 1992).

## CONCLUSION

The Court denies summary judgment with respect to Plaintiff's claims for common law fraud and conspiracy to defraud because a genuine issue of material fact exists regarding those claims. The Court grants summary judgment for the Duffy Defendants under Count I because there is no genuine dispute that ERISA does not entitle Plaintiff to the relief it seeks from the Duffy Defendants in Count I. The Court denies summary judgment on Defendants arbitration defense because the CBA does not require Plaintiff to seek arbitration on this dispute prior to litigation.

Dated: December 14, 2004          ENTERED:

AMY J. ST. EVE
United States District Court Judge